**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMANI BARSOUM,<br><br>*Plaintiff,*<br><br>v.<br><br>STOP AND SHOP, AHOLD USA, INC., JOHN DOES 1-3 (names being fictitious/unknown) and ABS CORPS. 1-3 (names being fictitious/unknown)<br><br>*Defendants.* | Civil Action No.: 3:14-05323 (PGS)(TJB)<br><br>**MEMORANDUM**<br>**AND**<br>**ORDER** |

**SHERIDAN, District Judge.**

This case concerns alleged disability discrimination and retaliation against Defendants The Stop & Shop Supermarket Company LLC (incorrectly named in the Complaint as "Stop and Shop") (hereinafter "Stop & Shop") and Ahold USA, Inc. (hereinafter jointly referred to as "Defendants"). There were also allegations of national origin discrimination, but these claims appear to be abandoned.

**Facts and Procedural History**

Amani Barsoum (hereinafter "Barsoum" or "Plaintiff") was born in Egypt in 1962 and came to the United States in 1986. (ECF No. 23, Plaintiff's Supplemental Statement of Material Facts ("PSMF") at ¶ 1). Plaintiff is employed with the Defendant, Stop & Shop, in the Keyport store as a Front End Associate. (PSMF at ¶ 2; ECF No. 18-1, Defendants' Statement of Undisputed Material Facts ("DSMF") at ¶ 7). Only one Front End Associate is assigned to the

1

area at a time and therefore, according to Stop & Shop, if an employee needs a break another employee must fill the position. (DSMF at ¶ 9).

The Plaintiff takes medication, Lasix, which requires her to take frequent bathroom breaks (hereinafter "relief breaks"). (PSMF at ¶ 3). Angelo Cordero (hereinafter "Cordero"), the Store Manager at the Keyport Stop & Shop, knew Plaintiff had a medical condition that required her to urinate frequently. (*Id.* at ¶¶ 4, 5). Tina Dietze (hereinafter "Dietze") became the Plaintiff's manager in early 2013, and was aware of the Plaintiff's need for relief breaks. (*Id.* at ¶¶ 7, 9).

On July 13, 2013, Plaintiff approached Scott Traeger (hereinafter "Traeger"), HR Manager of Stop & Shop. (DSMF at ¶ 18). Plaintiff alleged that Dietze had given her a "hard time" when she asked for a relief break, and had declined her request for a break when she was menstruating. Plaintiff also claimed that Dietze spoke down to her, always had an attitude with her, and treated her in an unwelcoming and hostile manner (*Id.* at ¶ 19, 20). This complaint did not allege that Dietze's treatment was based on Plaintiff's race, national origin, or handicap. (*Id.* at ¶ 21). Traeger then set up a meeting between himself, Cordero and Plaintiff. (*Id.* at ¶ 22). Plaintiff described her concerns about Dietze and her need for relief breaks. (*Id.* at ¶ 23). Cordero then told Plaintiff that she could use the restroom at any time, but should give Dietze notice to find someone to cover. (*Id.* at ¶ 26). Dietze told Traeger and Cordero that the Plaintiff had abandoned her workstation more than once and needed to remind the Plaintiff to give her enough notice to fill her station. (*Id.*, at ¶ 27.) Cordero counseled Dietze to work on her "soft skills" and show more patience with Plaintiff. (*Id.* at ¶ 28).

Plaintiff had purportedly stopped taking medication to avoid using the restroom. (PSMF at ¶ 18). Cordero and the Dietze met with the Plaintiff and told the Plaintiff to continue to take

2

her medication, and assured the Plaintiff she could have relief breaks as needed. Cordero advised Plaintiff to give Dietze sufficient notice to arrange coverage. (PSMF at ¶ 17; DSMF at ¶¶ 30, 31).

In May 2013, the Plaintiff was investigated for possible improper use of her bonus card by Philip Doig, whose main job responsibility was to investigate Coupon Policy violations. But she was cleared of suspicion. (DSMF, ¶¶ 32, 34). Stop & Shop's coupon policy requires that only one manufacturing coupon be accepted per item, but the Hassle Free Policy grants employees flexibility to accept coupons that may otherwise be in violation of the policy. (*Id.* at ¶¶ 4, 5). The leniency provided by the Hassle Free Policy is granted to customers but not to employees. (*Id.* at ¶ 5).

On August 1, 2013, Dietze allegedly noticed Plaintiff repeatedly needing assistance to override the checkout system to redeem coupons while Plaintiff was doing her personal shopping. Dietze collected her scanned coupons from the coupon box and then alerted Doig. (*Id.* at ¶¶ 18-19). Defendants claim that Dietze had no involvement in the investigation after she notified Doig. (*Id.* at ¶ 41). Doig reviewed Plaintiff's coupon usage history over a 12-week period, and watched surveillance footage. (*Id.* at ¶ 45, 46). He noted that Plaintiff had used the same $5 off coupon twice by failing to properly dispose of it after the first use. (*Id.* at ¶ 47). Doig noticed another violation on August 11, 2013 when Plaintiff combined two coupons. (*Id.* at ¶ 49). Doig also found that two other employees, Irene Michaeli and Melissa Ely, had facilitated Plaintiff's violations by overriding the register. (*Id.* at ¶ 50). Doig interviewed another employee, Matthew Strelsky, who felt pressured to improperly redeem coupons for Plaintiff and was "bull[ied] into overlooking items that did not match coupons." (*Id.* at ¶ 51).

Doig met with Plaintiff on August 12, 2013, along with Cordero, and the local shop steward. Plaintiff admitting to doing the acts she was accused of, but said that she thought the policy did not apply to employees. (*Id.* at ¶¶ 54, 55). On August 13, 2013 the Plaintiff was suspended pending termination without pay and two other employees were also suspended. (PSMF at ¶ 26; DSMF at ¶ 57). Scott Trager (Human Resources Manager) and Edgardo Rohena (Asset Protection manager), with the concurrence of Cordero and Don Merit (business agent for union), ultimately made the decision to suspend Plaintiff. (DSMF at ¶ 42). Michaeli and Ely were also suspended for facilitating Plaintiff's violations. (*Id.* a ¶ 58).

Traeger reinstated the Plaintiff with the same status and pay on September 8, 2013, based on confusion over the application of the Hassle Free Policy, but her suspension was unpaid. (*Id.* at ¶¶ 63, 67). On September 15, 2013, Plaintiff wrote a letter to the President of Stop & Shop protesting her suspension and speculating that Doig had plotted with Dietze to terminate her. (*Id.* at ¶ 69). On September 24, 2013, Plaintiff told Cordero at a meeting with Traeger and Dietrich that Dietze disliked her. (*Id.* at ¶ 70). Cordero offered the Plaintiff a transfer to the store in Aberdeen, less than four miles away, but explained that he would not be sure of the role or the hours. (PSMF, ¶ 38; DSMF, ¶ 71). The Plaintiff declined the transfer. (PSMF, ¶ 39).

Plaintiff also complained about Dietze telling Plaintiff to "just go" and "flipping her hand" when asking for a bathroom break, yelling at her for leaving a company iPad unattended, saying things under her breath, saying that she would handle customer problems instead of Plaintiff, and asking Plaintiff to take a personal call from her son in a private room upstairs. (DSMF ¶ 73). All of these incidents were investigated and no misconduct was found. (*Id.* at ¶ 75). It is not clear when these incidents occurred, and if they occurred after her suspension. Dietze transferred to a different location in May 2015.

The parties are in dispute concerning the extent of Ms. Deitze's knowledge of the plaintiff's medical need, the extent of Ms. Deitze's treatment of the plaintiff, and the application of the coupon policy. The Defendant asserts that the Plaintiff did not provide a medical condition and that Dietze was not specifically advised of Plaintiff's medical situation, or if the medical condition was supported by a doctor's diagnosis. (*Id.* at ¶¶ 3, 9). The parties are in dispute regarding the Plaintiff's knowledge of the coupon policy and how it was followed in practice. The Plaintiff asserts that the above coupon policy is not applied in practice and that coupons for similar items can be used, and that the Hassle Free Policy applies to employees as well as customers. (PSMF, ¶¶ 4, 5). The parties dispute if the Plaintiff had ever been criticized for leaving her workstation before back-up coverage had arrived, or if Plaintiff was ever refused a bathroom break. (DSMF, ¶¶ 11-15). Plaintiff asserts that a fellow employee, Matthew Strelsky, witnessed Dietze "happy" after plaintiff walked out of the door following suspension, and Dietze may have said she was glad to have finally been done with Plaintiff. (PSMF at ¶¶ 29-31). Furthermore, upon return from suspension, Dietze treatment of the Plaintiff did not improve. (DSMF at ¶¶ 33-35). Defendant asserts that the Plaintiff was unable to identify a witness to Dietze's treatment. (*Id.* at ¶ 24).

Count I alleges a violation of the N.J. Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-5, et seq. Count II alleges a violation of the N.J. Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 et. seq,. for disability discrimination. Count III alleges a violation of the LAD for retaliation, N.J.S.A. 10:5-12(d) et seq. Count IV alleges a violation of the LAD for national origin and race-based discrimination, N.J.S.A. 10:5-1 eq. seq.

**Legal Standard:**

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48.

**Analysis:**

*I.  CEPA (Count I)*

Plaintiff brings a cause of action under the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1. A prima facie CEPA claim requires Plaintiff to satisfy the following elements: "(1) he or she reasonably believed that his or her employer's conduct was

violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19–3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Caver v. City of Trenton*, 420 F.3d 243, 254 (3d Cir. 2005).

CEPA claims must concern a clear public mandate or public issue; the statute does not cover private disputes between the employee and employer. *See Matthews v. N.J. Inst. Of Tech.*, 772 F. Supp. 2d 647, 654 (D.N.J. 2011); *Maw v. Advanced Clinical Comms.*, 179 N.J. 439, 445 (2004); *see also Michaelgreaves v. Gap, Inc.*, 2013 WL 257127, at *4 (D.N.J. Jan. 23, 2013).

Defendant argues that this case concerns a "private dispute" and the claim must be dismissed. This is a simple workplace disagreement between an employee (Barsoum) and a manager (Dietze). (DSOF ¶ 21). When speaking with Cordero and Trager, Plaintiff described the situation as a workplace conflict over relief breaks, and not about handicap, race, or nationality, according to Defendant. (DSOF ¶ 23). In her deposition, Plaintiff said, "I don't know why she [Deitze] gave me a hard time." (DSOF ¶ 79).

In opposition, Plaintiff says that Dietze failed to accommodate her medical disability and harassed her when she sought accommodation. Plaintiff says, "Certainly, an employee's right to a reasonable accommodation and accordingly the right to be accommodated without fear of harassment or intimidation by one's supervisors is also an issue that implicates a public interest." (Def's Brief in Opp, at 20). However, this conclusory assertion does not support the public nature of these allegations.

The Court agrees that this case involves a private dispute. Plaintiff had disagreements with Dietze about relief breaks, and Plaintiff has not presented any evidence suggesting that this can arise to a public concern. Summary judgment is granted on this count.

Alternatively, Defendants contend that there is no causal connection between a protected activity and the suspension. "To qualify as an adverse employment action under CEPA, the employer's action must have a significant impact on the employee's compensation or rank." *Marracco v. Kuder*, 2008 WL 4192064, at *8. The "adverse employment action" here would be Plaintiff's temporary suspension from the coupon fraud investigation. There was other alleged harassment that occurred after she filed the July 13 complaint letter, including where Dietze (1) seemed unhappy when Plaintiff asked for a relief break and told her to "just go;" (2) "yelled" at Plaintiff for leaving a Company iPad unattended; (3) told Plaintiff that she would handle a customer problem instead; and (4) told Plaintiff to take a personal call from her son on a private line in the manager's office. (DSOF ¶ 73). Defendant claims that none of these equate to an "adverse action." Moreover, Dietze, also a member of the union, did not take any adverse employment decisions against Plaintiff, had nothing to do with the investigation or the decision to suspend her, and did not have any authority to suspend her, according to Defendant. (SOF ¶ 41-43).

The investigations into Plaintiff's possible abuse of the discount system occurred before her complaint. Also, according to Defendants, these investigations were a standard part of Shop & Shop's security operations. (DSOF ¶ 35). Dietze also said that she had initiated other coupon fraud investigations against other employees. (DSOF ¶ 36). *See Caver v. City of Trenton*, 420 F.3d 243, 258 (3d Cir. 2005) ("Retaliatory motive on the part of non-decision-makers is not enough to satisfy the causation element of a CEPA claim"). Plaintiff also admitted to using the

coupons in violation of the Company policy, although she said she was confused at the time about whether the Policy applied to employees as well as customers. (DSOF ¶ 6). *See Cipriano v. City of Trenton*, 2009 WL 578646, at *3-4 (N.J. Super. Ct. App. Div. Mar. 9, 2009) (granting summary judgment in CEPA case where plaintiff admitted to infractions that led to employer sanctioning employee).

Plaintiff responds by saying that she was clearly suspended and lost pay for the time she was suspended, constituting an adverse employment action. Plaintiff also says, "there is a crystal clear causal connection between the protected act and her suspension," but once again, these conclusory statements will not suffice.

The Court also finds that the element of causation is missing here as well, and any "adverse employment action" does not appear to have a "significant impact on the employee's compensation or rank." *Maracco*, 2008 WL 4192064, at *8. The suspension was temporary, and the employee's rank and compensation did not change. Also, it does not seem that Dietze participated in the investigation, or made the ultimate decision to suspend Plaintiff. Plaintiff admits to committing the act that violated the coupon policy. The Court would also grant summary judgment on the CEPA claim on these grounds.

## II. LAD—disability discrimination (Count II); race/nat'l origin discrimination (Count IV)

Counts two and four of the Complaint allege discrimination based on race and national origin, and alleged handicap under the New Jersey LAD. Plaintiff alleges that she was wrongfully suspended, and when she returned she was still treated in a "discriminatory and otherwise hostile manner." (Compl. ¶¶ 23, 32). Courts analyze disparate treatment claims under the LAD under the three-part burden shifting analysis of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Victor v. N.J.*, 203 N.J. 383, 408-409 (2010). First, Plaintiff has the burden

of establishing a prima facie case of discrimination. If she does so, Plaintiff then has to provide a legitimate, non-discriminatory reason for the adverse action. *Victor*, 203 N.J. at 408, n. 9. Then the burden shifts back to Plaintiff to establish by a preponderance of the evidence that Defendant's reason is pretextual. *Id.* Plaintiff must show that the "prohibited consideration played a role in the decision making process and that it had a determinative influence on the outcome of that process." *Schwinge v. Deptford Tp. Bd. of Educ.*, 2011 WL 689615, at *3 (D.N.J. Feb. 17, 2011) (internal citations omitted).

"A disparate treatment claim with regard to discipline requires comparison between the defendant's conduct toward plaintiff and other members of a protected class on one hand, and similarly situated employees not within the protected class on the other." *Jason v. Showboat Hotel & Casino*, 329 N.J. Super. 295, 305 (App. Div. 2000). To make out a prima facie claim, Plaintiff must show that (1) she is a member of a protected class; (2) she was performing her job consistent with the expectations of the employer; (3) she suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment decisions. *McCann v. Trump Marina*, 2009 WL 4877261, at *2 (N.J. Super. Ct. App. Div. Dec. 18, 2009).

Plaintiff has not provided any evidence of race or national original discrimination, or that it factored into her suspension. She admitted that no one at Stop & Shop made comments about her Egyptian heritage (DSOF ¶ 79); nor did Plaintiff mention race or national origin discrimination in her July 13, 2013 complaint letter. (DSOF ¶ 21). Also, two non-Egyptian employees were also suspended for participating in Plaintiff's coupon fraud. (DSOF ¶¶ 58-59). The opposition brief makes no mention of race or national origin discrimination, so the Court deems that Plaintiff has no opposition. Summary Judgment is granted on this claim.

Defendant also claims that Plaintiff has not met her prima facie burden of handicap discrimination based on disability. According to Defendant, Plaintiff has not identified her handicap, only calling it a "qualifying handicap consisting of a medical condition requiring her to take prescription medication" requiring her to frequently take relief breaks. (SOF ¶16). Plaintiff has pointed to Dietze's comments about her relief breaks, where Dietze would express impatience and "flip her hand" and tell her to "go." (SOF ¶73). However, Plaintiff admitted that Dietze never refused to let her take a relief break, but only requested notice to obtain coverage. (SOF ¶11, 13). *See Incorvati v. Best Buy & Co,* 2010 WL 4807062, at *6 (D.N.J. Nov. 16, 2010).

The Court must first determine whether Plaintiff is a member of a protected class. Handicap under the LAD may be physical or non-physical. NJSA 10:5-51(q). The definition of handicap is broadly construed. *See Clowes v. Termix International*, 109 N.J. 579, 590, 593 (1988). N.J.S.A. 10:5-5(q) states:

> "Handicapped" means suffering from physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness...which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impediment, deafness or hearing impediment, muteness or speech impediment or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device, or from any mental, psychological or developmental disability resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques. Handicapped shall also mean suffering from AIDS or HIV infection.

While it is not entirely clear that "frequent urination" would even fit the definition of "handicapped," the Court need not decide this motion on those grounds.

Even if Plaintiff could be classified as being part of a protected class, she still may not be able to establish that she was performing her job consistent with the expectations of the

11

employer, because she allegedly left her post on several occasions for relief breaks without finding a replacement. Therefore, it is highly questionable whether Plaintiff can satisfy the prima facie case under the LAD.

Nevertheless, even if Plaintiff could establish such a prima facie case, Defendant claims that it has a legitimate business reason for her suspension. According to Defendants, Stop & Shop had a well-publicized Coupon Policy stating that only one coupon could be used per item. (SOF ¶14). Plaintiff knew of this policy, and admitted committing the acts, although she thought the policy applied to employees as well. (DSOF ¶¶ 4-6).

Plaintiff may still show that this legitimate business reason was a pretext. To show pretext, Plaintiff must demonstrate by a preponderance of the evidence that the Company did not believe the reason for her suspension and that it was motivated by discriminatory intent. *Zive v. Stanely Roberts, Inc.*, 182 N.J. 436, 449 (2005). Also, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prodcs, Inc.*, 530 U.S. 133, 143 (2000) (internal quotations omitted). Plaintiff must point to "some evidence, direct or circumstantial, from which a fact finder could reasonably either: (1) disbelieve [Defendant's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely that not a motivating or determinative cause of [Defendant's] action." *LaResca v. AT&T*, 161 F. Supp. 2d 323, 335-36 (D.N.J. 2001). Plaintiff must show "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." *Hood v. Pfizer, Inc.*, 2007 WL 2892687, at *14 (D.N.J. Sept. 28, 2007). Plaintiff has offered no evidence to show that her

suspension was not due to a legitimate business reason (the breach of coupon policy) and that it was pretextual.

Defendant also addressed a failure to promote claim that was not mentioned in the Complaint but may have been brought up during discovery. However, Plaintiff's opposition brief failed to address that issue, and the Court will deem it as unopposed. *See Player v. Motiva Enters., LLC*, 240 F. App'x 513, 522, n. 4 (3d Cir. 2004). Generally, when a party moving for summary judgment claims that there is a lack of evidence to support the nonmoving party's case, and the nonmoving party does not respond, "the nonmoving party cannot later argue, on appeal, that there is evidence in the record that creates a genuine issue of material fact, if that evidence was not pointed out to the district court at the time of the motion for summary judgment." *Id*.

### III. LAD—Retaliation (Count III)

Plaintiff also makes a claim for retaliation under the LAD in Count III. Defendants claim that this should be dismissed because the LAD retaliation claim is barred by the CEPA claim, and because it would fail on the merits.

First, Defendants claim that the LAD retaliation claim is barred by the CEPA claim. According to Defendants, New Jersey courts have held that "institution of an action under CEPA constitutes a waiver of the rights and remedies available to plaintiff under any other contract, collective bargaining agreement, State law, rule or regulation or under common law." *Young v. Schering Corp.*, 275 N.J. Super. 221, 238 (App. Div. 1994). Waiver "applies to claims that are 'substantially related' to the CEPA claim." *See Simon v. Shore Cab, LLC*, 2014 WL 2777103, at *6 (D.N.J. June 19, 2014) (internal quotations omitted). Both claims arise out of Plaintiff's July 13, 2013 complaint letter, and both concern her suspension and "harassment." *See Woods v.*

*Township of Irvington*, 2009 WL 2475323, at *5 (granting summary judgment on LAD claim because facts were the same as those alleged in CEPA claim).

Plaintiff asserts that she did not waive her LAD retaliation claim because she may elect her remedies at the time of trial. Plaintiff may have an election of remedies until discovery is complete or until the time of the pretrial conference, according to Plaintiff. *See Young v. Schering Corp.*, 141 N.J. 16, 32 (1995).

In reply, Defendant argues that the *Young* case only held that claims are not foreclosed by the CEPA waiver where they arise from the same underlying facts of the CEPA claim, but still do "not include or involve the retaliatory conduct that is essential to the CEPA claim." *Id.* at 26. Here, according to Defendant, Barsoum's retaliation claim is based completely on the same retaliatory conduct underlying the CEPA claim, which is her suspension.

Second, Defendants assert that the LAD retaliation claim fails for the same reasons as the CEPA claim. For a LAD retaliation claim, Plaintiff must establish that (1) she was in a protected class; (2) she engaged in a protected activity known to the employer; (3) she was subject to an adverse employment decision after; and (4) there was a casual connection between the protected activity and the adverse employment decision. *Victor v. State*, 203 N.J. 383, 409. If Plaintiff succeeds, the burden shifts to the Defendant to provide a legitimate, non-retaliatory reason for the adverse action. *Jamison v. Rockaway Twp. Bd. of Educ.*, 242 N.J. Super. 436, 445 (App. Div. 1990). Again, Plaintiff then bears the burden of showing that the reason is pretextual. *Id.*

Defendants explain that there is no causation here. Causation may be found where "those exhibiting discriminatory animus influenced or participated in the decision to terminate." *Abrahamson v. William Paterson Coll of N.J.*, 260 F. 3d 265, 286 (3d Cir. 2001). "Mere temporal synchrony alone is insufficient to sustain plaintiff's prima facie case" for a LAD

retaliation claim. By itself, temporal proximity can only support a causation inference "where the facts of the particular case are…'unusually suggestive of a retaliatory motive.'" *Young v. Hobart West Group*, 385 N.J. Super. 448, 467 (App. Div. 2005).

In opposition, Plaintiff states that she engaged in a protected activity when she wrote to Scott Traeger and then approached him and met with Angel Cordero in July 2013 to report harassment she was experiencing from her supervisor, Dietze. Plaintiff claims that this meeting led to the coupon fraud investigation, which was initiated by Dietze. Plaintiff asserts that "Dietze's multiple reasons for her alleged 'suspicion' are non-sensical and belie Plaintiff's allegations in this case." (Pl's Opp Brief, at 18). Plaintiff also claims that causation is evident because Matthew Strelsky claims that he watched Dietze "literally patting herself on the back and stating that she was happy to finally be rid of Plaintiff," when Plaintiff was leaving the store following the suspension notification. (*Id.* at 19). Also, according to Plaintiff, this treatment remained after Plaintiff returned from her suspension, and Strelsky testified that Dietze "was out to get" Plaintiff and the treatment was "definitely not better" upon her return. (*Id.* at 20).

However, the suspicion can hardly be nonsensical if Plaintiff admitted to engaging in the actions that turned out to be prohibited. As previously mentioned, Plaintiff cannot establish facts that are "unusually suggestive of a retaliatory motive." *Young*, 385 N.J. at 467. Again, even if Plaintiff can set forth a prima facie case for retaliation, Plaintiff cannot show that the reason for her suspension—that she committed coupon fraud—was pretextual.

### IV. *Hostile work environment*

Plaintiff's Complaint does not have a Count for hostile work environment, but the body of the Complaint contains such allegations. A hostile work environment claim based on national origin, race or handicap would require that the conduct (1) occurred because of her inclusion in a

protected class, and was (2) severe or pervasive enough to make a (3) reasonable member of Plaintiff's protected class believe that (4) the conditions of employment were altered and the working environment was hostile or abusive. *Lehmann v. Toys R. Us, Inc.* 132 N.J. 587, 603-04 (1993).

    Defendant argues that there is no evidence that Dietze's conduct was severe or pervasive. Defendant points to the fact that Plaintiff was offered a transfer to a store four miles away, but she declined, and then worked with Dietze for almost another two years without complaint. *See Herman v. Coastal Corp.*, 348 N.J. Super. 1, 23 (App. Div. 2002) (explaining that an illegal "hostile work environment," is not an "annoying work environment."). Also, "an employer's use and the effectiveness of anti-harassment policies are relevant to the determination of its liability." *J.S. v. Borough of Englewood Cliffs*, 2014 WL 8843405, at *9 (N.J. Super. Ct. App. Div. May 18, 2015). Here, after Plaintiff's complaint, Trager and Cordero met with Plaintiff, and they set up a meeting with Dietze. At the meeting, Dietze told Plaintiff not to stop taking her medication and to ask her when she needed a relief break.

    Either way, Plaintiff has not responded to the hostile work environment claim in her opposition brief, and the Court will also deem this claim as unopposed.

**ORDER**

    THIS MATTER having been presented to the Court upon Defendants' Fed. R. Civ. P. 56 motion for summary judgment [ECF No. 18]; and after considering the submissions of the parties, and after hearing oral argument; for the reasons stated herein, and for good cause shown:

    IT IS on this 2nd day of August, 2016, hereby

**ORDERED** that Defendant's motion for summary judgment [ECF No. 18] is

**GRANTED**, Plaintiff's Complaint is dismissed in its entirety, and the clerk may close this case.

_____
PETER G. SHERIDAN, U.S.D.J.